Good morning. May it please the Court, my name is Lindbergh Porter, appearing on behalf of Appellant Wells Fargo Home Mortgage. I would like to reserve eight minutes for rebuttal. There is an issue here in this appeal that is not in the Bonneau case, and that can be disposed of quickly. Here, the District Court held that employees living and working outside of California could pursue violations You have the Sullivan case that you've called to our attention, right? Yes, Your Honor. Do you think that's dispositive of that issue, and if it is, what falls away? The Ninth Circuit addressed the exact issue with respect to employees outside of California claiming under the California UCL, so-called 17200 claims. The parties in Sullivan stipulated that the Oracle decision to classify employees was made in California. The Ninth Circuit nevertheless held, and I quote here, We conclude that section 17200 does not apply to claims of non-residents of California who allege violations of the FLSA outside California. That decides the issue of extraterritorial application of 17200 in Wells Fargo's favor. That is the issue that drops away. All right. But then if we agree that Sullivan is dispositive of that, what else falls away with that? I believe that Sullivan also demonstrates that the Court erred in the analysis of the predominance and the superiority requirements of 23b-3. The Sullivan opinion shows that an employer's decision to classify a group of employees as exempt doesn't determine liability for overtime purposes. After having found that Oracle's classification decision was made in California and applied nationwide to all employees, the Court nonetheless held that that did not give rise to liability. Thus, the classification decision itself could not have been unlawful, and it couldn't reasonably be otherwise. If it were otherwise, the public policy implications would be profound because all employers make group classification determinations. If it were sufficient to certify an exemption misclassification claim, then all exemption misclassification claims would be certified. Rather, classification is appropriate only if there is a predominance of common issues that could determine liability. In other words, will the testimony of the named plaintiffs regarding how they performed the job be representative of all, in this case, 30,000 class members or putative class members? And the answer to that question has to be no. The district court in our case, in the Wells Fargo case, found that home mortgage consultants, HMCs, are given a great deal of flexibility and autonomy in the means, in the manner, in the work style, and the amount of time they spend doing their jobs. It found that numerous factual inquiries must be resolved to determine the applicability of at least four overtime exemptions. And then, focusing just on the outside sales exemption, which was at issue in the Vinol case, the district court found wide variation among HMCs in terms of the amount of time spent on outside sales activity, depending on personal preference, experience, and reliance on support staff. HMC independence and discretion and variation in how they perform the job is made poignant by the district court's finding that HMCs average annually $150,000 in California and can earn over a million dollars per year. Even one of plaintiff's declarants from New York had earnings over $600,000 in a year. The district court even found that plaintiffs have not shown that class representatives are typical to the extent that such typicality depends on substantial similarities in the day-to-day activities of HMCs. Now, despite these findings, the district court granted class certification because it would, the issue in Vinol again, be, and I'm quoting, manifestly disingenuous for a company to treat a class of employees as a homogeneous group for the purposes of internal policies and compensation, and then assert the same group to be too diverse for class treatment. Well, in fairness to Judge Patel, there does seem to be an emphasis at the beginning and at the end of the opinion, but there are other things that are discussed in the district court's opinion. So how can we say that that's, that was the dispositive issue and the only thing that, you know, that she made that the issue and that ended the inquiry? Because she does talk about other things. She does talk about other things, but she does not make a finding or rest a finding on other things. She mentions, in terms of uniform policies, she mentions training and recruiting, for example, saying that the plaintiffs had called that to the court's attention. Here, however, the issue with respect to predominance is, is the predominance with respect to an issue that determines liability. Liability here is determined based on whether the employees worked, in the case of the Fair Labor Standards Act, more than 40 hours in a week doing tasks that were non-exempt. That's the issue. And the district court found wide variations in how they do their jobs. And so in terms of a mention of uniform policies or a job description, for example, those do not go to the question of whether liability for overtime is shown. Well, let me go ahead. I'm sorry. I beg your pardon. Is the mistake that Judge Patel made giving dispositive weight to the classification, the fact that Wells Fargo had this classification, that she gave that dispositive weight? I believe that that was critical to her decision, and it was obvious error. Okay. If that's a legal error, if you're right, then do we send it back and tell her to reconsider it and don't give dispositive weight, just go back and do the calculus again, but as a matter of law, don't give dispositive weight to this factor, or what happens if you win or if you're right? I don't think it's necessary to send it back. We have an unusual development here. We have an unusual record, namely that the judge, in looking at the predominance factors and looking at the commonality factors, looked at the exemption asserted by Wells Fargo and found, as I have quoted to the Court here in the brief, that there were wide variations, that individualized fact-intensive inquiries would be required. The record is complete before this Court. I don't see how you can prevail that way. Because if the error is that she gave dispositive weight to one factor, I mean essentially my understanding is that you're arguing that you were a stop from challenging either predominance or superiority based on how the district court applied Wang. And so that you're arguing that the district court found a predominance of individual issues but nevertheless felt bound to certify the class because Wells Fargo itself uniformly applied overtime exemptions to these people you call HMCs. So if we say you're wrong as a matter of law, that you can't, that that's wrong, then you just say, I mean the Court's got to say, I would find it hard to believe that that couldn't be a factor, but I might find appealing that it's not the dispositive factor. That being the case, why wouldn't we send it back to her to say you're wrong to say it's the dispositive factor, now consider it as part of the calculus and then make a decision? I know you want to win right here, but that would be your reason. But I just don't see how we can do that. Well, I think because the record that we have and because of the factors in the record, because this is a case that comes to the Court on evidence from more than 100 declarations that the trial judge, that Judge Patel looked at and made the findings that we refer to. And once those findings are made, it becomes clear that predominance of B3 has not been met. And so sending it back could not change the result in the case. It was an error to use the standard or to use it. It seems to me you're just telling us to exercise our discretion, then, and we don't exercise discretion. Thank you. I appreciate that. That is not what we are asking you to do. We're asking the Court to apply the rule of law here to the facts that are present. In this instance, if it is an abuse of discretion standard, then, and we don't argue differently, then it is whether those factors, in the words of one of the cases, mauled the correct mix of facts, but came to an incorrect decision by assigning the wrong case, excuse me, by deciding it, applying the wrong law. And so that is why here it would not, it should not make a difference if it went back, because we have the record. A number of common questions are identified. That's not the test. It is whether there are common answers on a pertinent or pertinent facts that determine liability. And the exemptions here require individualized analysis, which the trial judge already found. And so there cannot be predominance, because a handful of plaintiffs, cannot testify such that the answers pertaining to them would apply to all others. The district judge found that, to the extent that the day-to-day activities are different, that even the representatives were not typical. And that's why I think that this Court can make the decision with regard to that issue, without having to send it back to the trial court. It's important for us to point out here that Wells Fargo is not contending, in response to a question in Vanole, that exemption misclassification claims can never be certified. Many exemption misclassification claims can be certified, where the employer dictates how the job is performed, or absent such dictation, tells the employees, or gives the employees, rosters and agendas such that the job has to be performed in a tightly standardized parameter. Again, that's not the case here. This case should be decided consistent with Vanole on that point, with respect to the variation in the job duties, and consistent with other cases pertaining to mortgage originators, namely, Oliveau v. GMAC Mortgage, and Trent v. JPMorgan Chase, which we discussed in the brief. Excuse me, I didn't mean to interrupt you. You said you wanted eight minutes. Did you want to finish your sentence? I would. Thank you. Let me just speak just very briefly, again, with respect to the Portal to Portal Act. The district court also erred in permitting plaintiffs to pursue violations of the FLSA on an opt-out basis, despite the FLSA explicitly requiring plaintiffs to affirmatively opt in. Plaintiffs here attempt to graft the opt-out procedure of the FLSA onto, excuse me, of Section 17-200 onto the FLSA. That's not permitted. It squarely contradicts what Congress wrote and what Congress intended under the FLSA. Finally, I want it to be clear, Wells Fargo wants it to be clear, that it is not claiming that the FLSA preempts state law. If California saw fit to adopt the substantive provisions of the FLSA and then permit them to be pursued on an opt-out basis, Wells Fargo would not question that California plaintiffs could then pursue state law claims on an opt-out basis. California, however, has not adopted such a rule. If you're right about the effect of Sullivan and Oracle, the nationwide class drops out. Am I right in that we don't have to worry about this opt-in, opt-out conflict? That is correct. The nationwide Rule 23 certification drops out, and I believe I am right about Sullivan. The rule of the Ninth Circuit is that one panel accepts the decision having been made by another panel on the point of law. Good morning. I'm George Hanson, and I'm appearing here as lead counsel for the nationwide plaintiffs. This is an MDL action currently coordinated before Judge Patel. My colleague, Kevin McInerney, will be speaking on behalf of the California class. Who's going to talk about Sullivan? That would be me. All right. Well, why don't you just take that head-on, because it's certainly relevant, if not dispositive, so tell us why it's not dispositive or why it's not the death knell to the nationwide class. Judge, we certainly recognize the Sullivan opinion. We recognize it may very well have an impact on the application of the UCL outside of California. Our view, though, is that the Sullivan opinion simply underscores that there is a common question, a common legal question that predominates our class and one that needs to be resolved on a class-wide basis. And in this situation, Judge Patel and we, frankly, deserve the opportunity to brief and argue the application of the Sullivan decision to the facts of our case and do it in the context of a trial court opinion. It may well be that... Well, but our position, here we are, and I'm going to tell you that I, if I were a visionary, if we didn't apply Sullivan and say that takes care of the nationwide case, it's going to get an en banc call because we wouldn't be following our precedent. I mean, we are bound by our precedent, and trust me, I don't like that all the time, but I've learned that much. Right, and sometimes we don't either. However, look, we do understand that the Sullivan opinion is potentially a game changer, but we have not had an opportunity to address its application to our set of facts. And I do recognize what the Sullivan opinion says. I do recognize that in that case it affirmed the trial court and found that you could not apply the UCL case extraterritorially, but the posture of that case is different than ours. There were underlying complexities in the way those claims were brought that are different than ours. I think the appropriate way to handle Sullivan is to allow the trial court to treat it, to allow both sides to fully brief its application, and then have a determination, and that determination would be made on a classified basis. And then it would fall back to us whether they got it right, and then we'll be deciding that issue. Why don't we decide it right now? Well, I would also point out, and it is not our interest to unduly delay the issues. We have always believed that there are common issues that should be resolved on a class basis. That's the soul of the efficiency embodied by Rule 23. Whether the UCL applies to our non-California residents is one of those questions, but I would strongly argue that it is not appropriate at this time to make that determination. I would also note that the Sullivan opinion is, as I understand it, under petition for rehearing. The briefs have been submitted. At this point, we don't know exactly how the Rule 23 applies. I don't think they argued the extraterritorial issue in that part of it, because there were other issues. Was that argued in the petition for rehearing? I don't think it was. My understanding is the Sullivan plaintiffs did raise that. Okay. Then the next thing is, but let's say if we don't agree with you and we say that Sullivan is a problem for you, then does it necessarily follow that we don't need to decide the opt-in, opt-out issue? If you decide that Sullivan is a problem for us? Yes. If you decide that Sullivan completely disposes of our case and you rule on a Rule 23F appeal, that that part of our asserted class is decided, which I, again, suggest. Right. No, I know you're not conceding that. At that point, that's correct, because we would not have a conflict. The opt-out class goes away, and that leaves the opt-in case to go forward. Were you to decide now that we do not have a Rule 23 opt-out class, we would be left with our 216B FLSA opt-in class. That's what we would be left with. That's correct. I would like to address a couple of other issues, and I certainly do recognize that Sullivan is an issue. We believe an issue that needs to be treated through the trial court, at least as an initial matter. But to the discretion that is afforded the trial court under Rule 23, and, Judge Callahan, to your question to Mr. Singer earlier, it is a very possible result that two judges under Rule 23 looking at the identical record may, in the exercise of their own sound discretion, reach different results. That I can buy, unless she made a legal error by giving dispositive weight to one factor. And then her discretion would have been tainted by that error. Were she to have given a dispositive weight in a manner inconsistent with the direction of Rule 23, then I do think a remand for clarification would be necessary. But she did not give dispositive weight to the issue of the classification. You know, as I read her order, it looks like all the way along you're going to lose. You're going to get to the last page. However, I'm going to, you know, you win because of Fang. I will concede this. In reading the order, I thought it was going to be a judgment call until the end, because she was clearly giving Wells Fargo every benefit of doubt, clearly crediting every possible argument that they had regarding individuality. Candidly, she gave those arguments far too much credit, because the record isn't as individualized as Wells Fargo would suggest. But she was painstaking in her effort to give Wells Fargo their arguments, to consider them, to balance them, and then ultimately, in her discretion, in making the qualitative test, which is embodied in Rule 23b3, found that common questions nonetheless predominate. And in so doing... Well, your best argument, though, is really even though it looks like that was the dispositive, she didn't talk about all the other things, so it was all going on, and so she did everything she was supposed to do, and she didn't really give dispositive weight. Well, and I'd like just to read the quote that everyone has been quoting as if it's some kind of blasphemous writing, because I do think it's been significantly taken out of context. After Judge Patel reviews the factual record, gives a rigorous scrutiny to all the Rule 23a and then 23b factors, recognizing in candor that some individual issues exist, she addressed those head-on. She made this observation. It is manifestly disingenuous for a company to treat a class of employees as a homogenous group for the purposes of internal policies and compensation, and then assert that the same group is too diverse for class treatment and overtime litigation. She did not make that comment in a vacuum. And note that she did not say if a company misclassifies a group, they automatically can't also argue against certification. She simply recognized that it was inconsistent and disingenuous for Wells Fargo to give agencies all the same job title, have all the same job duties, be under identical compensation plans, under an identical structural organization, identical training. The plural here is critical, the common treatment of internal policies and compensation. She didn't say just the classification decision alone. That was not the only thing she was relying on. And the entire scrutiny of the factual record that she gave makes that comment clear. It was an observation. It was a factor in finding predominance, but it wasn't the only factor, and it certainly wasn't a dispositive factor. And we would suggest strongly that remand is not appropriate when she never said a dispositive factor. In fact, if she had wanted it to be a dispositive factor, she would have simply said, Wells Fargo classified all these people as exempt. That's all I need to do. So why did she write a 20-some page order giving rigorous and careful scrutiny to all of the underlying factual issues to find the Rule 23a factors were met, as well as the Rule 23b-3? So our position is there is not a dispositive per se bright line rule. Would you like me to address the opt-in, opt-out issue? At this point, I have a... Well, I better get to it. Wells Fargo claims that it is not arguing preemption, but that's exactly what they're contending. They're contending that Congress, through the Fair Labor Standards Act, essentially makes it impossible for the California's UCL to operate. And frankly, that argument, although they say it's not preemption, that preemption, that's exactly what it is. And the uniform weight of authority, starting with the California Supreme Court in Cortez, makes clear that you can have a UCL claim coexist with an FLSA claim, because they're different claims. They're different statutory frameworks enacted for a different purpose and for different remedies. Thank you very much. Thank you. Good morning. I'd like to reserve, if I may, four minutes. Well, you got your ten, and then you're done, so there's no rebuttal. What am I thinking? Well, you know, there's something of schizophrenia in the air, because, just as a practical footnote before we get into Judge Patel's decision, while Wells Fargo petitioned this court for review of her order, and we have a fairly prompt hearing, Wells Fargo let class notice go out, and just as a practical footnote, I've been representing, for now a year, 6,000 HMCs. So there is this practical question of what happens if this decision of Judge Patel is reversed. This may not seem like a criminal case, but it might be a life sentence to Mr. Porter and me and Judge Patel to be trying 6,000 individual cases. But I don't want that result, and I don't think we have to reach it. Something that hasn't been mentioned to this panel, but I'd like to bring it up, because I think it's pretty important. These cases involving overtime and exemption are totally different than other cases involving class certification. And the reason for that is, and I've tried some of these, and when you really try one, you realize the effect of the burden of proof. Liability, the burden is on the employer. And so when you try one of these cases, they're really backwards. The defense starts the case, because you stipulate right at the beginning that these people work more than 40 hours, and they were classified as exempt, and no overtime was paid. So there's a two-minute stipulation read into the record, and then the defense has to get up and prove the exemption. Now, what Judge Patel seized upon, I think, was there was some schizophrenia also there, because in trying to avoid class certification, and she puts this right at the beginning of her argument, the two primary opponents for Wells says that everybody did everything differently, nobody was the same, and by the way, we don't keep track of them. We have no clue as to what, you know, these people were doing. Now, that's, you know, nice to try to defeat class certification, but a judge can look at the merits to see what sort of a methodology might be utilized at trial. Now, you know, people think it's like my burden as a plaintiff's counsel to come up with a trial methodology, but with the burden of proof on liability being with Wells Fargo, they got the problem. So they have to get up to bat first. They've got the burden of proof in this unique type of case, and they've just completely shot themselves in the foot, and maybe other bodily parts, too, because what they've said is, we got no idea what these people were doing. Well, how then do you justify the exemption? Now, the question also came up earlier. Could you have a per se rule that just because there was uniform classification, the plaintiff wins? Perhaps not, but it is important to realize, because when you focus on that question, you get to the point and you say, wait a minute, the employer's burden is to properly classify people, and to make sure, once classified, that they're checking to see what these people are doing, because things may change with time. So what Judge Patel was saying is, look, these people now are saying, we don't know what these people were doing, but it was the employer's burden initially, and a continuing burden to know what these people were doing. I would also note that, you know, we talk about surveys and everything else. Well, in the course of representing these folks, I've been conducting some informal discovery, and I was informed, belatedly, that a document that was produced in discovery was a survey conducted by the U.S. government. It's a standardized form. It's a form that has to be completed with every single mortgage application, and at the bottom, a little check box, and those boxes, in my view, are determinative of where it was taken, where the application, because it has to be checked, done in person, phone, Internet, mail. I'm not going to tell you what the results are. Well, this isn't in the record, right? Okay, but we have to decide this case by the record. The decision that Judge Patel made had largely to do with where predominance and, I think, superiority merge, and that's the question of manageability, and that's really a call that the district court has to make, because they're the ones stuck with trying the case if they decide to certify it, and they're stuck with the outfall, if any, if they don't certify it, and she went through them, all of them in detail, and it was a rollercoaster opinion. There's no question about it. As I was reading it, I went up and I went down, I went up, I went down, but she certainly took us through every particular aspect. I don't know what more you can ask a district court judge to do. She considered every single exemption, and again, that's their burden, not mine, theirs, and she concluded, and our record, and I would say this, our record was perhaps more developed than the one that the plaintiffs were able to muster in Pinole. I mean, we proffered the expert, Mr. Drogan, who was, of course, the expert in Dukes v. Walmart, and in numerous other cases, and so we proffered a trial methodology, while at the same time reminding Judge Patel that it's not our burden, and they've already destroyed themselves in trying to defeat certification, and it was proper for her to comment on that, that it was disingenuous because it was going to be their burden come trial time, and how were they going to, you know, what kind of evidence were they going to be able to muster to meet their burden when they've just turned in declarations saying, we don't have a clue what these people are doing? Thank you. Thank you, Mr. McInerney. I think we're back to Mr. Porter. I'd like to respond to points raised by both, and I'll try to be brief. With respect to so-called common factors, training, recruiting, the type of compensation that I have in the job description, those do not go to the issue of how much the employees worked in the office or out of the office, what their job duties were. The job description in this instance says very broadly, your job is to solicit high-quality mortgages and to serve our customers well, that's it. And the variation found by Judge Patel shows how they did that. These were entrepreneurial in the way that they went about doing that. The amount of money they earned, some earning seven times as much as others is another example. With respect to the number of hours, there is no stipulation regarding how many hours they worked. The declaration of the evidence shows that some of them worked as few as 30 hours and some claim to have worked, in the case of the plaintiffs, I believe 65 or 70 hours. Now, was it your group that they get a draw on their commission? That's correct. As opposed to in the countrywide case, it's just straight commission, right? Well, in both cases, there was a commission schedule in both cases. In Wells Fargo, and I'm not familiar with the countrywide case, in addition to the commission, there was an element that was a guarantee. They earned more than that. So it was a commission-based system in both cases. And with respect to the Benold point, the fact developed in the trial court record, showing the variation, showing the compensation, showing the similarity in the wide variety of ways in which they do their job, are all very similar. And to decide the cases differently would be a disservice to one of these companies, because they are competitors. And because if one is required to reclassify and the other not, it certainly will have an impact. These are very large companies and very large competitors. With respect to the burden of proof, it is not Wells Fargo's burden of proof on class certification. It remains a plaintiff's burden at all times to show that the so-called common factors have common answers on the pertinent questions that are relevant to overtime determination. That burden never shifts. It is the burden of an employer in asserting an exemption to show that the exemption can apply. And the record developed here shows that Judge Patel looked at that and said herself that individualized fact-intensive inquiry is required to determine the exemption. That cannot be predominant under that circumstance. His point was that how can you show, how can you meet your burden of showing an exemption applies if you don't keep records? The record keeping is a false herring. It flows from the initial decision. Wells Fargo is not required, employers are not required under the FLSA to keep time records for those who are exempt from the overtime requirements. And so that is so-called common issue, doesn't exist because it doesn't go to the issue of liability. And we show it as we did in the declarations and the testimony of employees. The employees themselves testified regarding the number of hours that they worked, and that is a permissible form of testimony. With respect to Judge Patel, we don't have to show, I don't think, that she gave this positive weight, although we do believe that she gave this positive weight to overtime determination. Rather, under the abuse of discretion standard, I think it's enough to show that she gave undue disproportionate weight to that and to those issues that are not relevant to the pertinent question of overtime. The common classification, if you will, and the policies and so on, are factors that don't go to what the employees did on a day-to-day basis. Their jobs were not controlled, they were not told how to do it, when to do it, and where to do it. That is what Judge Patel essentially found. Let me just sum up to say that class actions satisfy due process concerns only when the class is sufficiently similar in pertinent respects, that the evidence regarding class representatives barely represent what the evidence would be of absent class members or what they could offer. If the circumstances of the absent class members vary widely, then no judgment can be applied looking at one or two to the others. Where uniform policies result in critical factors being the same for all class members, then perhaps you can have that. But where the uniform policies do not eliminate factual differences, then class certification is inappropriate. And that's exactly what we have here. And with respect to sampling, I think it's pretty self-evident that if you vary a, excuse me, if you sample a widely varied population, you're going to get a widely varied sample, if it's properly done. And so with respect to sampling or some other methodology, it doesn't apply here because we never get to liability. Because predominance has not been found in this instance. And for that reason, and based on the record of the trial court, which we don't argue with the fact finding made by the trial court, we believe that it should be reversed and it's not necessary to send it back to the district court for that. Mr. Porter, thank you. Mr. Hanson, Mr. McInerney, thank you, gentlemen, as well. The case has started. You may submit it and we'll stand at recess for today.
judges: Silverman, Callahan, Mills